UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KRISTINE
KRZYWDZINSKI,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

Case No. 2:21-cv-12461
District Judge Gershwin A. Drain
Magistrate Judge Anthony P. Patti

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION TO DENY
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (ECF No. 17),
GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF
No. 19), and AFFIRM THE COMMISSIONER'S DECISION**

**I.     RECOMMENDATION**:  For the reasons that follow, it is

**RECOMMENDED** that the Court **DENY** Plaintiff's motion for summary

judgment (ECF No. 17), **GRANT** Defendant's motion for summary judgment

(ECF No. 19), and **AFFIRM** the Commissioner's decision.

**II.    REPORT**

       Plaintiff, Kristine Krzywdzinski, *in pro per*, brings this action under 42

U.S.C. §§ 405(g) for review of a final decision of the Commissioner of Social

Security (Commissioner) denying her application for disability insurance (DI)

benefits under Title II of the Social Security Act.  (ECF No. 1, PageID.2.)  This

matter is before the United States Magistrate Judge for a Report and
Recommendation on Plaintiff's motion for summary judgment (ECF No. 17), the
Commissioner's cross-motion for summary judgment (ECF No. 19), Plaintiff's
reply (ECF No. 20), and the administrative record (ECF No. 15).

### A.    Background and Administrative History

On March 2, 2016, Plaintiff applied for DI benefits.  (ECF No. 15,
PageID.482-485.)  Plaintiff alleges her disability began on October 10, 2013, at the
age of 53.  (*Id*., PageID.555.)  In her disability report, she lists several conditions
(adrenal mass, hyperlipidemia, primary aldosteronism, hypokalemia,
hyperparathyroidism, hypercalcemia, hypertension due to endocrine disorder,
peripheral vascular disease, episodic mood disorder, and meningioma) as limiting
her ability to work.  (*Id*., PageID.558.)  Plaintiff's application was denied in
November 2016.  (*Id*., PageID.229-244, 305-312.)

### 1.    September 13, 2017 hearing

Plaintiff requested a hearing by an Administrative Law Judge (ALJ).  (*Id*.,
PageID.313-316.)  On September 13, 2017, ALJ Elias Xenos held a hearing, at
which Plaintiff and a vocational expert (VE), Dr. Donald Harrison, testified.  (*Id*.,
PageID.189-227.)  On May 1, 2018, at which point Plaintiff was 57 years of age,
ALJ Xenos issued an opinion, which determined that Plaintiff was not disabled
within the meaning of the Social Security Act.  (*Id*., PageID.245-266.)  *At the time*

2

*of this decision, the ALJ had access to Exhibits 1F to 13F, i.e., 327 pages of records.* (*Id.*, PageID.266; *id.*, PageID.704-1030.)

Plaintiff submitted a request for review of the hearing decision/order. (*Id.*, PageID.360.) On October 30, 2018, the Appeals Council remanded the case to the ALJ with several directions, among which was to "[o]btain additional evidence concerning the claimant's physical impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence . . . ." (*Id.*, PageID.267-270.)

### 2.    March 7, 2019 hearing

On March 7, 2019, ALJ Xenos held a hearing, at which Plaintiff and VE Marty South testified. (*Id.*, PageID.156-187.) On April 23, 2019, at which point Plaintiff was 58 years of age, ALJ Xenos issued a "partially favorable" decision, which determined that Plaintiff "was not disabled prior to February 8, 2018, but became disabled on that date and has continued to be disabled through the date of th[e] decision." (*Id.*, PageID.271-297.) *At the time of this decision, the ALJ had access to Exhibits 1F to 14F, i.e., an additional 58 pages of records from the University of Michigan Health System and Henry Ford Health System dated March 25, 2003 to March 6, 2018.* (*Id.*, PageID.297; *id.*, PageID.1031-1088.)

3

In May 2019, Plaintiff appointed counsel to represent her.  (ECF No. 15, PageID.396-397.)  Plaintiff, via her representative, submitted a request for review of the hearing decision/order.  (*Id*., PageID.398.)  On May 8, 2020, the Appeals Council remanded the case with several directions – among which was to "[o]btain additional evidence concerning the claimant's impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence" – as well as an instruction that the case "be assigned to another [ALJ]."  (*Id*., PageID.300-302.)

### 3.   April 6, 2021 hearing

On April 6, 2021, ALJ Rita Foley held a hearing, at which Plaintiff and VE Elizabeth Pasikowski testified.  (*Id*., PageID.112-154.)  On April 22, 2021, at which point Plaintiff was 60 years of age, ALJ Foley issued an opinion, which determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (*Id*., PageID.70-110.)  *At the time of this decision, the ALJ had access to Exhibits 1F to 19F, i.e., an additional 596 pages of records dated October 2013 to December 2020.*  (*Id*., PageID.109-110; *id*., PageID.1089-1684.)

In a letter dated June 15, 2021, Plaintiff wrote to the Appeals Council.  (ECF No. 15, PageID.697-702.)  On June 22, 2021, she submitted a request for review of the hearing decision/order.  (*Id*., PageID.478-480.)  However, on August 18, 2021, the Appeals Council denied Plaintiff's request for review.  (*Id*., PageID.57-62.)

4

Thus, ALJ Foley's decision became the Commissioner's final decision.  Plaintiff timely commenced the instant action on October 18, 2021.  (ECF No. 1; ECF No. 15, PageID.58.)

### B.    Plaintiff's Medical History

The administrative record contains approximately 981 pages of medical records.  (ECF No. 15, PageID.704-1684 [Exhibits 1F-19F]).  These materials were available to the ALJ at the time of her April 22, 2021 decision (*id*., PageID.70, 108-110), and will be discussed in detail, as necessary, below.

### C.    The April 19, 2021 Administrative Decision

Pursuant to 20 C.F.R. § 404.920(a)(4), at **Step 1** of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date (AOD), *i.e.*, October 10, 2013.  (ECF No. 15, PageID.76-77.)  At **Step 2**, the ALJ found that Plaintiff had the following severe impairments:  disorders of the lumbar spine, including degenerative disc disease, lumbar spondylosis without myelopathy or radiculopathy, moderate canal stenosis, and disc protrusions; hypertension; peripheral arterial disease; non-obstructive coronary artery disease; mixed hyperlipidemia; adrenal adenoma with hyperaldosteronism; hyperparathyroidism; asymmetric hyperreflexia; chronic lacunar infarct; obstructive sleep apnea; and obesity.  (*Id*., PageID.77-81.)  At **Step 3**, the ALJ found that Plaintiff did not have an impairment or combination of

5

impairments that met or medically equaled the severity of one of the listed

impairments.  (*Id*., PageID.82-87.)  **Between Steps 3 and 4** of the sequential

process, the ALJ evaluated Plaintiff's residual functional capacity (RFC)[1] and

determined that Plaintiff had the RFC:

> . . . to perform sedentary work . . . except the claimant requires the
> ability to alternate between sitting and standing every 30 to 60
> minutes [*i.e., exertional limitations*], while remaining on task; the
> claimant can never climb ladders, ropes, or scaffolds, kneel, or crawl;
> the claimant can occasionally climb ramps and stairs, stoop, crouch,
> and balance [*i.e., postural limitations*]; the claimant can occasionally
> reach overhead with the bilateral upper extremities; the claimant (a
> right hand dominant person) can frequently handle, finger, feel, and
> operate hand controls bilaterally [*i.e., manipulative limitations*]; the
> claimant can have only occasional exposure to extreme cold, extreme
> heat, and industrial vibration; the claimant can never be exposed to
> unprotected heights; and the claimant can never operate dangerous
> machinery [*i.e., environmental limitations*].

(*Id*., PageID.87-100.)  At **Step 4**, the ALJ determined that Plaintiff was capable of

performing past relevant work as a customer complaint clerk and a medical record

clerk, noting that this work does not require the performance of work-related

activities precluded by Plaintiff's RFC.  (*Id*., PageID.100-101.)  Then, in an

alternative **Step 5** finding, the ALJ determined that, considering Plaintiff's age,

education, work experience, and RFC, there were other jobs that existed in

---

[1] The claimant's "residual functional capacity" is an assessment of the most the
claimant can do in a work setting despite his or her physical or mental limitations.
20 C.F.R. §§ 404.1545(a), 416.945(a); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d
235, 239 (6th Cir. 2002).

significant numbers in the national economy that Plaintiff also could perform, such as a receptionist (DOT No. 237.367-038).  (*Id.*, PageID.101-103.)[2]  The ALJ therefore concluded that Plaintiff had not been under a disability, as defined in the Social Security Act, from October 10, 2013, through the date of the decision.  (*Id.*, PageID.103.)

### D.    Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal

---

[2] Within the ALJ's discussion of "alternative findings for step five . . . [,]" she acknowledges Plaintiff's transitions from a "[p]erson closely approaching advanced age[,]" to a "person of advanced age[,]" and ultimately to a "[p]erson closely approaching retirement age" 20 CFR §§ 404.1563, 416.963, and also states that Plaintiff "has at least a high school education" and "has acquired work skills from past relevant work (20 CFR 404.1568 and 416.968)."  (ECF No. 15, PageID.101.)  The ALJ also acknowledged that, "[i]n determining whether a successful adjustment to other work can be made, the undersigned must consider the claimant's residual functional capacity, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2."  (ECF No. 15, PageID.102.)  Ultimately, the ALJ concluded: "although the claimant's additional limitations do not allow the claimant to perform the full range of sedentary work, considering the claimant's age, education and transferable work skills, a finding of 'not disabled' is appropriate under the framework of Medical-Vocational Rule 201.15 and Rule 201.07[,]" (ECF No. 15, PageID.103), *i.e.*, rules contained within the table concerning "Residual Functional Capacity:  Maximum Sustained Work Capability Limited to Sedentary Work as a Result of Severe Medically Determinable Impairment(s)[.]"  *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 2.

standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see*

*also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as

to any fact, if supported by substantial evidence, shall be conclusive . . . .").  Under

this standard, "[s]ubstantial evidence is defined as 'more than a scintilla of

evidence but less than a preponderance; it is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion.'"  *Rogers*, 486 F.3d at 241

(quoting *Cutlip v. Sec'y of Health and Human Servs.*, 25 F.3d 284, 286 (6th Cir.

1994)).  In deciding whether substantial evidence supports the ALJ's decision, the

Court does "not try the case de novo, resolve conflicts in evidence, or decide

questions of credibility."  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007);

*Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court,

to evaluate the credibility of witnesses, including that of the claimant.").

Although the substantial evidence standard is deferential, it is not trivial.

The Court must "'take into account whatever in the record fairly detracts from

[the] weight'" of the Commissioner's decision.  *TNS, Inc. v. NLRB*, 296 F.3d 384,

395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487

(1951)).  Nevertheless, "if substantial evidence supports the ALJ's decision, this

Court defers to that finding 'even if there is substantial evidence in the record that

would have supported an opposite conclusion.'"  *Blakley v. Comm'r of Soc. Sec.*,

581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273

(6th Cir. 1997)).  Finally, even if the ALJ's decision meets the substantial evidence

standard, "'a decision of the Commissioner will not be upheld where the SSA fails

to follow its own regulations and where that error prejudices a claimant on the

merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651

(quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### E.    Analysis

While Plaintiff's *complaint* suggests that Plaintiff may be challenging

alleged errors made in the initial denial (2016), some or all of the three ALJ

opinions (2018 and 2019, and 2021), and perhaps also the Appeals Council's

August 18, 2021 denial of her request for review (ECF No. 15, PageID.57-62) –

including dissatisfaction with the number of venues where her application landed

and revisions to the onset date –  her statement of issues *in the instant summary

judgment motion* seemingly seeks an unrealistically broad judicial review.

(*Compare* ECF No. 1, PageID.4, ¶¶ 1-4; *id.*, PageID.6-9, 11-16; *with*, ECF No. 17,

PageID.1688.)  My Practice Guidelines for Social Security case briefing, *inter alia*:

(1) direct attention the requirement of "a concise statement of the issues presented .

. . [,]" E.D. Mich. LR 7.1(d)(2); and, (2) require the "Issues Presented" to "indicate

the error allegedly committed by the Administrative Law Judge, i.e., the bases for

the appeal and grounds for reversal." (*See* www.mied.uscourts.gov.)  Plaintiff's

identified issues vaguely refer to, *inter alia*, such things as "many omitted and misrepresented medical documents and test[i]mony . . . [,]" dismissive treatment of "side effects from medication," the need to "take into con[s]ideration [that] [I] have been dealing with this since 2003 … stealing my life from me in so many ways[,]" and her willingness to "[negotiate] back pay . . . ."  (ECF No. 17, PageID.1688.)  In short, she is "asking this court to please take the time to look through this file to understand what [I] have been going [through] all these years . . . ."  (*Id.*)  Her briefing fails to shed any more light on exactly what error(s) the ALJs are alleged to have made, as the "argument" simply lists a series of pages in the record, with nothing more (*id.*, PageID.1690), and her response/reply to the Commissioner's motion states *in its entirety*:  "I disagree with their response, as [I] feel there is substantial evidence in my file and testimony that supports my claim that was, omitted or discredited in all four of their decisions[.]"  (ECF No. 20, PageID.1722.)  In essence, Plaintiff is seeking a *de novo* review of the entire 981-page medical record and clearly misunderstands the much more constricted standard of review that applies to a federal court appeal of an administrative Social Security decision.  In fact, "the Court has no affirmative duty to go through the state agency reviewer's (or the consultative examiner's) findings with a fine-toothed comb to verify consistency with the [lengthy] record . . . ."  *Davis v. Comm'r of Soc. Sec.*, Case No. 2:15-cv-12644, 2016 WL 4445774, at *10 (E.D.

Mich. July 29, 2016), *report and recommendation adopted*, 2016 WL 4429641 (E.D. Mich. Aug. 22, 2016).  Moreover, "'[i]t is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.'"  *McPherson v. Kelsey*, 125 F.3d 989, 996 (6th Cir. 1997) (quoting *Citizens Awareness Network, Inc. v. United States Nuclear Regulatory Comm'n*, 59 F.3d 284, 293-294 (1st Cir.1995) (citation omitted)).)  Furthermore, the fact that Plaintiff is *pro se* does not lessen her obligations under Fed. R. Civ. P. 56.  Rather, "liberal treatment of *pro se* pleadings does not require lenient treatment of substantive law."  *Durante v. Fairlane Town Ctr.*, 201 F. App'x 338, 344 (6th Cir. 2006).  "Once a case has progressed to the summary judgment stage, . . . 'the liberal pleading standards under *Swierkiewicz* [*v. Sorema N.A.*, 534 U.S. 506, 512-13 (2002)] and [the Federal Rules] are inapplicable.'"  *Tucker v. Union of Needletrades, Indus. & Textile Employees*, 407 F.3d 784, 788 (6th Cir. 2005) (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004)).  And the Supreme Court has made abundantly clear that, "[d]istrict judges have no obligation to act as counsel or paralegal to *pro se* litigants."  *Pliler v. Ford*, 542 U.S. 225, 231 (2004).

Nonetheless, the Commissioner solicitously distills the *particular* issues on appeal as follows:

- Did the ALJ accurately characterize the record evidence?

11

- Did the ALJ properly consider medication side effects when evaluating Plaintiff's statements about the severity and limiting effects of her impairments?

I agree with this construction of the issues before the Court; accordingly, this report assumes Plaintiff challenges the RFC determination and whether her symptoms – namely medication side effects – were properly considered.

### 1.    The RFC determination (20 C.F.R. §§ 404.1520(e), 416.920(e))

In finding that Plaintiff had the RFC to perform work at the sedentary exertional level, with certain other exertional, postural, manipulative and environmental limitations, ALJ Foley provided a lengthy, 13-page explanation, wherein she reviewed hearing testimony, function reports, medical evidence of record, and opinion evidence.  (*See* ECF No. 15, PageID.87-100.)  The ALJ concluded that Plaintiff "can perform a less than full range of sedentary work[,]" specifically referencing, *inter alia*, the "sit/stand option."  (*Id.*, PageID.98.)  The ALJ also made the following statements, which reflect the ALJ's opinion about the strength of the evidence:

- <u>the record is replete with evidence of</u> the claimant's daily cigarette use and continuous advice from her treatment providers to cease smoking. In this regard, the claimant was strongly advised to quit smoking during several appointments throughout the years (1F/1-2, 7, 13, 14-15 [ECF No. 15, PageID.704-705, 710, 716, 717-718]; 2F/12 [*id.*, PageID.800]; 8F/6 [*id.*, PageID.956]; 16F/6, 25 [*id.*, PageID.1387, 1408]).

- while [this] [ALJ] certainly acknowledges the claimant's diagnoses and the few exacerbations of her cardiac and vascular conditions throughout the years, <u>the record is also replete with evidence of</u> the claimant's mostly stable condition and her asymptomatic condition (as discussed in detail above).  As such, a sedentary exertional level with additional restrictions appears reasonably supported to prevent exacerbation of her condition and to account for the claimant's diagnoses, but again, greater limitations do not appear reasonably supported.

- although the claimant has had a few hospital visits for hypertensive emergencies throughout the years, <u>the medical evidence of record is replete with statements from</u> the claimant's treatment provider noting that she was ultimately stable and asymptomatic from vascular and cardiovascular standpoints.

(ECF No. 15, PageID.98-100.)

### a.    Representation of evidence

Plaintiff ambiguously asserts in her summary judgment motion that there are "[m]any omitted and misrepresented medical documents and test[i]mony in [the] file, many in [the] [Commissioner's] [Exhibit] packet[.]"  (ECF No. 17, PageID.1688 ¶ 1.)  However, to the extent Plaintiff intended to argue that ALJ Foley's April 22, 2021 decision was misleading, failed to provide record support, omitted consideration of record evidence, or misrepresented record evidence, these assertions are conclusory.  In making these statements, Plaintiff fails to identify what portion of ALJ Foley's decision was misleading, what portion of the decision

13

lacks record support, what piece of evidence she did not consider, or what piece of evidence she misrepresented.

Two additional points deserve comment.   First, the entirety of the "argument" section in her motion for summary judgment consists of six record citations <u>without description</u>:

- Medical records dated March 25, 2003 to March 6, 2018 (ECF No. 15, PageID.1031-1088 [Ex. 14F])

- October 2013 records from Henry Ford Health System (*id.*, PageID.1546-1575 [Ex. 17F])

- Plaintiff's correspondence dated February 24, 2016 to June 30, 2018 (*id.*, PageID.643-648 [Ex. 15E])

- Seemingly, Plaintiff's March 31, 2016 function report (*id.*, PageID.577-584 [Ex. 4E])

- October 13, 2017 progress notes from Mikel, Llanes, M.D. (*id.*, PageID.1112 [Ex. 15F])

- March 16, 2018 progress notes from Leah Rebecca Brock, M.S.W. (*id.*, PageID.1192-1193 [Ex. 15F])

(ECF No. 17, PageID.1690.)  Plaintiff's list of record citations – not only without description of the records themselves but also without explanation of why she cited them – and perfunctory request to "[p]lease see" them is simply an undeveloped argument that does not aid the Court in determining whether the ALJ committed legal error.  "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *McPherson*, 125

14

F.3d at 995-96 (citation and internal quotation marks omitted); *see also United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999).

Second, Plaintiff's one-sentence response (reply) – "I disagree with their response, as [I] feel there is substantial evidence in my file and testimony that supports my claim that was . . . omitted or discredited in all 4 of their decisions[,]" (ECF No. 20, PageID.1722) – does nothing to dispute the Commissioner's argument that the ALJ properly characterized the evidence (*see* ECF No. 19, PageID.1711-1714). And, in the event the ALJ did not expressly cite a particular part of the record, an ALJ "is not required to analyze the relevance of each piece of evidence individually." *Bailey v. Comm'r of Soc. Sec.*, 413 F. App'x 853, 855 (6th Cir. 2011).) *See also Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (citing *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)) ("While it might be helpful for an ALJ to articulate his reasons for crediting or discrediting each ... opinion, it is well settled that 'an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.' ").[3]

---

[3] Plaintiff generically contends *within her complaint* that "[a]ll decisions w[ere] misleading and failed to document supporting medical documents, using their own opi[nion] and omitting what is in file[,]"(ECF No. 1, PageID.4 ¶ 4), in support of which she references her attachments, which include her six-page June 15, 2021 letter to the Appeals Council (ECF No. 15-6, PageID.697-702) and her August 18, 2021 Appeals Council notice of denial (*id*., PageID.57-60). (*See* ECF No. 1, PageID.4 ¶ 4; *id*., PageID.6-9, 11-16.) But attachments to pleadings are not

Here, the ALJ stated that she rendered her decision "[a]fter careful consideration of the entire record[.]" (ECF No. 15, PageID.76, 87.) Consistent with the ALJ's representation, her 13-page RFC discussion contains numerous references to medical evidence of record. (*See*, *e.g.*, ECF No. 15, PageID.89-99.) Thus, the ALJ's opinion appears to be well-supported by substantial evidence, which is all that is required. 42 U.S.C. § 405(g); *Rogers*, 486 F.3d at 241. As detailed above, neither Plaintiff's initiating document nor her motion for summary judgment illustrate otherwise. Moreover, contrary to Plaintiff's suggestion of a *de novo* review and re-weighing of the evidence by this Court, the narrow scope of judicial review of the Commissioner's final administrative decision does not include re-weighing evidence, deciding questions of credibility, or substituting the court's judgment for that of the ALJ. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Bass*, 499 F.3d at 509. In other words, "[i]f the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if

_____

argument to the Court in support of a motion for summary judgment. In any case, when arguing that the ALJ "properly characterized the evidence[,]" the Commissioner expends approximately three pages of text to address items Plaintiff mentioned within her June 15, 2021 letter, and in doing so provides multiple, unrefuted pin citations to the record, such as: (i) the ALJ's treatment of the 2013 hospital stay (ECF No. 15, PageID.91, 698); (ii) the ALJ's treatment of the January 2017 parathyroidectomy (*id*., PageID.91, 700); (iii) the ALJ's treatment of February 8, 2018 hospital record (*id*., PageID.95, 700); and, (iv) the ALJ's failure to discuss the February 24, 2018 hospital stay (*id*., PageID.700). (*See* ECF No. 19, PageID.1711-1714.)

substantial evidence would support the opposite conclusion." *Id.* at 509 (citing

*Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005)).

### b.   Opinion evidence

Plaintiff *pleads* that the "third [ALJ] used her opi[nion] rather than medical

document[s] from physician[s], even their own phys[icians][.]"  (ECF No. 1,

PageID.4 ¶ 3.)  Although this is not contained within her motion for summary

judgment, it will be construed as a challenge to the ALJ's consideration of the

opinion evidence, in light of Plaintiff's *pro se* status.  ALJ Foley noted her

consideration of the "opinion evidence in accordance with the requirements of 20

CFR 404.1527 and 416.927[,]" and, within the RFC discussion, made at least three

specific assignments of weight:

- "significant weight" to the June 20, 2016 internal medicine consultative examination report of Leonidas Rojas, M.D. (ECF No. 15, PageID.867-872);

- "partial weight" to the July 23, 2019 cardiac RFC questionnaire completed by Ann Luciano, ACNP-PC (ECF No. 15, PageID.1375-1380); and,

- "not . . . considerable weight" to the November 15, 2016 physical RFC assessment of state agency medical consultant Alyce Metoyer, DO (*see* ECF No. 15, PageID.239-242).

(ECF No. 15, PageID.87, 93-94, 99.)[4]  (*See also* ECF No. 19, PageID.1708-1710.)

To the extent Plaintiff intended an opinion evidence argument, it is unavailing.  Her brief statement that the ALJ "used her opi[nion] rather than medical document[s] from physician[s], even their own phys[icians][,]" (ECF No. 1, PageID.4 ¶ 3), is belied by the RFC discussion's numerous references to medical evidence of record, not to mention the ALJ's express consideration of Dr. Rojas's CE report, nurse practitioner Luciano's cardiac RFC questionnaire, and the state agency medical consultant Dr. Metoyer's physical RFC assessment.  (*See* ECF No. 15, PageID.89-99.)  Perhaps more importantly, Plaintiff's brief statement does not show this Court what, if anything, was legally erroneous about the ALJ's opinion evidence assessment.  (*See* 20 C.F.R. §§ 404.1527, 416.927.)

### 2.    Evaluation of symptoms (20 C.F.R. §§ 404.1529, 416.929 & SSR 16-3p)

Plaintiff makes several other sweeping claims, seemingly to challenge the ALJ's evaluation of Plaintiff's symptoms, such as:

- There are debilitating mental and physical symptoms noted "[throughout] the file leading up to, testing, diagnosis and continue after failed procedures to correct, leaving [her] to deal with them [the] rest of [her] life[.]"  (ECF No. 17, PageID.1688, ¶ 2.)

---

[4] Additionally, within the ALJ's Step II discussion, she cited the September 12, 2016 CE report of Suzann M. Kenna MA LLP / Terrance A. Mills PhD LP.  (ECF No. 15, PageID.944-946 [Ex. 6F] & ECF No. 15, PageID.948-950 [Ex. 7F].)

- The ALJ "[d]ismissed side effects from medication, some listed as allergies in medical file[.]"  (*Id.*, ¶ 3.)

- Plaintiff chose not to use a wheelchair in her day to day activities, because she feared she would lose what strength she had, as she "start[s] out strong then become[s] weak as the pain comes on, heart pounding ready to collapse, just like when [she does] the treadmill for testing[.]"  (*Id.*, ¶ 4.)

- The ALJ "fail[ed] to take into con[s]ideration" that Plaintiff "ha[s] been dealing with this since 2003, only to have mental and physical condition to progress, stealing [her] life from [her] in so many ways[.]"  (*Id.*, ¶ 5.)

(ECF No. 17, PageID.1688.)  Plaintiff also contends she is "unsure if [her] health will hold up to continue to work[.]"  (*Id.*, PageID.5.)

At various points in the written April 22, 2021 decision, the ALJ referenced Plaintiff's hearing testimony, her function report, and her daughter's third-party function report.  (ECF No. 15, PageID.76-77, 79-80, 88-89.)  At the outset of the RFC discussion, the ALJ explained that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR 16-3p."  (ECF No. 15, PageID.87.)  The ALJ then found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [the alleged] symptoms are not entirely consistent with the

19

medical evidence and other evidence in the record for the reasons explained in this decision."  (*Id*., PageID.89.)

Ultimately, the ALJ determined that Plaintiff's "statements about the intensity, persistence, and limiting effects of her symptoms" were "not entirely consistent because her allegations and testimony are not entirely reasonably supported by the medical evidence of record, objective findings, examination reports, treatment notes, and longitudinal evidence relating her impairments."  (*Id*., PageID.100.)  In support of this statement, she noted, *inter alia*:  (i) "relatively conservative treatment[;]" (ii) "mostly unremarkable" musculoskeletal, neurological, and cardiac examinations; and, as noted above, (iii) a record "replete with statements from [her] treatment provider noting that she was ultimately stable and asymptomatic from vascular and cardiovascular standpoints."  (*Id*.)  Then, having already reviewed the hearing testimony, function report, and "activities of daily living," (*see id*., PageID.79, 88, 93, 97), the ALJ concluded that Plaintiff "is able to perform light household chores, mow her lawn with some breaks, perform personal care tasks independently, foster supportive relationships with her family members and treatment providers, drive independently, and shop in stores for groceries and personal items."  (*Id*., PageID.100.)  In addition, the ALJ elsewhere mentioned Plaintiff's testimony that "she has issues with medication side effects," (*id*., PageID.88; *see also id*., PageID.131, 136, 198), a specific factor set forth in

20

the appropriate regulation, 20 C.F.R. 416.929(c)(3)(iv).  And, there are numerous

references to pain throughout the RFC discussion.  (*See* ECF No. 15, PageID.89-

90, 92-98.)

If Plaintiff intended to present a challenge to the ALJ's evaluation of

symptoms, including pain, neither her initiating document (*see* ECF No. 1,

PageID.4-5) nor her motion for summary judgment and list of record citations

(ECF No. 17, PageID.1688, 1690) puts forth a developed argument that the ALJ

improperly applied 20 CFR 404.1529 and 416.929 and SSR 16-3p.  Plaintiff has

failed to demonstrate how the ALJ was inaccurate in the above-described

symptoms findings, how the ALJ "[d]ismissed side effects from medication," or

how the record cited by the ALJ fails to provide "substantial evidence" in support

of her symptoms decision.  Instead, Plaintiff urges her own subjective view of why

she should be considered disabled, without explaining why records to the contrary

should be disregarded.  This is not enough to reverse the Commissioner.

### F.    Conclusion

Plaintiff has the burden of proof on her statement(s) of error.  *Walters v.

Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) ("[D]uring the first four

steps, the claimant has the burden of proof; this burden shifts to the Commissioner

only at Step Five.").  Nonetheless, as detailed in the foregoing discussion, Plaintiff

has not shown legal error in the ALJ's RFC determination.  Accordingly, for the

foregoing reasons, it is **RECOMMENDED** that the Court **DENY** Plaintiff's

motion for summary judgment (ECF No. 17), **GRANT** Defendant's motion for

summary judgment (ECF No. 19), and **AFFIRM** the Commissioner of Social

Security's decision.

## III.  PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 14 days of service,

as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule

72.1(d).  Failure to file specific objections constitutes a waiver of any further right

of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some

issues but fail to raise others with specificity will not preserve all the objections a

party might have to this Report and Recommendation.  *Willis v. Sec'y of Health &*

*Hum. Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers*

*Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule

72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No.

2," *etc.*  Any objection must precisely recite the provision of this Report and

Recommendation to which it pertains.  Not later than 14 days after service of an

objection, the opposing party may file a concise response proportionate to the

objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR

72.1(d).  The response must specifically address each issue raised in the objections,

in the same order, and labeled as "Response to Objection No. 1," "Response to

Objection No. 2," *etc.*  If the Court determines that any objections are without

merit, it may rule without awaiting the response.


Dated:  February 13, 2023

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE